OTTERBOURG, STEINDLER, HOUSTON
    & ROSEN, P.C.
Stanley L. Lane, Jr. (SL 8400)
Lloyd M. Green (LG 9140)
Attorneys for Plaintiff
The CIT Group/Commercial Services, Inc.
230 Park Avenue
New York, New York 10169
(212) 661-9100

**'08 CIV 7058**

**Judge McMahon**

AUG 07 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

THE CIT GROUP/COMMERCIAL SERVICES, INC.,     Case No. _____

                             Plaintiff,

    v.                                        **COMPLAINT**

ANTHONY PRISCO,

                             Defendant.
---------------------------------------------------------------x

Plaintiff, The CIT Group/Commercial Services, Inc. ("CIT"), by its attorneys, Otterbourg, Steindler, Houston & Rosen, P.C., as and for its complaint in this matter, respectfully alleges as follows:

**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

A. The Parties, Jurisdiction and Venue

       1.    At all material times hereinafter mentioned, Plaintiff CIT was, and still is, a corporation organized and existing under the laws of the State of New York. CIT maintains its principal place of business at 11 West 42nd Street, in the City, County and State of New York, and is engaged in the businesses of, among other things, factoring and commercial financing.

1059974.1

2. Upon information and belief, at all material times hereinafter mentioned, Defendant Anthony Prisco ("Prisco") was, and still is, an officer, director or otherwise financially interested in GI Apparel, Inc. ("GIA") and active in GIA's management. Upon information and belief, at all material times hereinafter mentioned, Prisco was a resident of the Township of Holmdel, located in the County of Monmouth in the State of New Jersey.

3. The amount in controversy exceeds $75,000.

4. This Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1332(a)(1).

5. Venue is proper in this judicial district by virtue of 28 U.S.C. § 1391(a) and by the express written agreement of the parties as hereinafter more fully set forth.

B. Prisco's Guaranty

6. On or about February 28, 2007, as an inducement to CIT to make loans or advances to, or otherwise to extend credit to, GIA, and to continue to provide factoring and financing services and other financial accommodations to GIA pursuant to, among other things, an "Amended and Restated Factoring Agreement" of the same date, and in consideration of CIT's doing, or having done any of the foregoing, Prisco made, executed and delivered to CIT in the City, County, and State of New York, his unconditional, written Guaranty of the full and indefeasible payment and performance when due of all then existing and future indebtedness, obligations or liabilities of GIA to CIT (collectively, "Obligations"), howsoever arising, whether direct or indirect, absolute or contingent, secured or unsecured, and whether arising under any of the Agreements between CIT and GIA (as defined in the Guaranty) (as then written or as amended or supplemented thereafter), by operation of law, or otherwise. A copy of Prisco's

absolute, unconditional and continuing Guaranty of payment of GIA's Obligations to CIT (hereafter the "Prisco Guaranty") is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "A."

    7.    The Prisco Guaranty (Exhibit "A") provided, among other things, and in relevant part, that:

    (A)    Prisco agreed to pay to CIT on demand the amount of all expenses (including its reasonable attorneys' fees) incurred by CIT in collecting or attempting to collect any of GIA's Obligations to CIT, whether from GIA, or from any other obligor, or from Prisco, or in realizing upon any collateral held by CIT for such Obligations; and that Prisco also agreed to pay interest at the highest lawful rate on all amounts payable to CIT thereunder, even if such amount could not be collected from GIA.

    (B)    Notice of acceptance of the Prisco Guaranty, the making of loans or advances, or the extension of credit to GIA, the purchase or acquisition of receivables from GIA, the amendment, execution or termination of any of the Agreements or any other agreements between CIT and GIA, and presentment, demand, protest, notice of protest, notice of non-payment, and all other notices to which GIA or Prisco might be entitled, and CIT's reliance on the Guaranty were all waived.

    (C)    Prisco agreed that CIT would not be liable for any failure to collect obligations or to realize upon any collateral or security therefor, or any part thereof, or for any delay in so doing, nor would CIT by under any obligation to take any action whatsoever with regard thereto.

    (D)    The Prisco Guaranty was absolute, unconditional and continuing, regardless of the validity, regularity or enforceability of any of the Obligations, or the fact that a security interest or lien in any collateral or security therefor might not be enforceable by CIT or might otherwise be subject to equities or defenses or prior claims in favor of others, or might be invalid or defective in any way or for any reason, including any action, or failure to act, on CIT's part.

(E) In the event any claim or action, or action on any judgment, based on the Prisco Guaranty was made or brought against Prisco by CIT, Prisco agreed not to deduct, set off, or seek to counterclaim for or recoup, any amounts which were or might be owed by CIT to Prisco, or for any loss of contribution from any other guarantor. Furthermore, in any litigation based on the Prisco Guaranty in which CIT and Prisco should be adverse parties, Prisco waived the right to interpose any defense based upon any statute of limitations or any claim of laches and expressly waived the performance of each and every condition precedent to which he might otherwise be entitled by law.

(F) Prisco specifically consented to the *in personam* jurisdiction of the courts of New York State, and agreed that in connection with any action brought in any state or any federal court in New York, service of process could be made upon him by mailing a copy of the Summons to him at 3 Fieldgate Court, Holmdel, New Jersey 07733.

(G) Prisco agreed that CIT's books and records showing the account between CIT and GIA would be admissible in evidence in any action or proceeding as *prima facie* proof of the items therein set forth; and that CIT's monthly statements rendered to GIA would be binding upon Prisco, whether or not Prisco actually received copies thereof, and would constitute an account stated between CIT and GIA, unless CIT would have received a written statement of GIA's exceptions thereto within thirty (30) days after any such statement objected to was mailed to GIA.

(H) The Prisco Guaranty was executed and given in addition to, and not in substitution, reduction, replacement or satisfaction of any other endorsements or guarantees of the Obligations, then existing or thereafter executed by him or by any other party in CIT's favor.

(I) TO THE EXTENT PERMITTED BY APPLICABLE LAW, PRISCO WAIVED ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY OUT OF THE PRISCO GUARANTY OR ANY OTHER AGREEMENT OR TRANSACTION BETWEEN HIM AND CIT OR TO WHICH BOTH CIT AND PRISCO WERE PARTIES.

(J) The Prisco Guaranty would be governed by and construed in accordance with the laws of New York State.

## THE AMOUNTS DUE

A. <u>CIT's Commercial Agreements with GIA</u>

8. Also on or about February 28, 2007, CIT and GIA entered into the Amended and Restated Factoring Agreement (the "Factoring Agreement") pursuant to which, among other things, CIT agreed to continue to act as GIA's factor, and to extend certain financial accommodations to GIA, and GIA agreed to repay to CIT all obligations created under and pursuant to said Factoring Agreement. A copy of the Factoring Agreement is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "B."

9. Subsequent to February 28, 2007, and pursuant to the Factoring Agreement between CIT and GIA, CIT acted as factor for, and granted financial accommodations to, GIA, by, among other things, purchasing GIA's accounts receivable, providing at CIT's discretion credit approval for GIA's orders from, and shipping to, its customers, by assuming certain credit risks on approved orders, and by making advances to GIA. CIT sent monthly statements of account to GIA reflecting the accounts purchased, advances made, fees and charges, and all other financial transactions between CIT and GIA during the preceding month.

10. In addition to the factoring arrangement between CIT and GIA that existed under the Factoring Agreement, and as contemplated thereby, on or about February 28, 2007, CIT and GIA also entered into a separate "Inventory Security Agreement" (the "Inventory Agreement," and together with the Factoring Agreement, and as each may have been amended from time to time, the "Financing Agreements"), pursuant to which GIA granted CIT a security interest in all of its "present and hereafter acquired merchandise, inventory and goods, and all

additions, substitutions and replacements thereof, wherever located, together with all goods and materials used or usable in manufacturing, processing, packaging or shipping same, in all stages of production -- from raw materials to work-in-process to finished goods -- and all proceeds of whatever sort" (said items being defined in the Inventory Agreement as the "Inventory" and referred to herein as "CIT Collateral"). GIA granted CIT a security interest in the Inventory in consideration of CIT's agreement to make discretionary loans and advances to GIA from time to time up to "the lesser of: (i) sixty (60%) percent of the value of GIA's 'Eligible Inventory' (as therein defined) calculated on the basis of the lower of cost or market, with cost calculated on a first-in-first-out basis or (ii) $7,000,000." A copy of the Inventory Agreement between CIT and GIA is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "C."

11. As of March 25, 2008, the aggregate principal indebtedness owing from GIA to CIT in respect of all loans, advances and other financial accommodations extended by CIT to GIA under the Financing Agreements aggregated not less than $6,263,000, together with interest accrued and accruing thereon, the costs and expenses of CIT (including, without limitation, the fees and disbursements of CIT's counsel) and various other sums and charges, all as provided in said Agreements.

B. <u>GIA's Defaults and Its Surrender of the Inventory and Other Collateral</u>

12. On or about March 25, 2008, CIT delivered written notice to GIA of its defaults under the Financing Agreements by reason of, among other things, GIA's (i) having failed to repay when demanded by CIT, the amount of outstanding loans and advances made by CIT to GIA in excess of the amount of Eligible Inventory pursuant to the Inventory Agreement, and (ii) the cessation of GIA's business in violation of the Factoring Agreement. A copy of

CIT's default notice, dated March 25, 2008, is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "D."

13. Following GIA's receipt of CIT's March 25, 2008 defaults notice, and following the application of certain collections received by CIT after March 25, 2008, CIT and GIA on or about April 11, 2008 entered into a written peaceful possession agreement (the "Peaceful Possession Letter") pursuant to which GIA acknowledged that as of April 11, 2008, GIA was indebted to CIT pursuant to the Financing Agreements in the amount not less than $6,200,000, together with interest accrued and accruing, costs, expenses and other charges, and that said amount was unconditionally owed by GIA to CIT "without offset, defense or counterclaim of any kind, nature or description whatsoever." A copy of the Peaceful Possession Letter is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "E."

14. In the Peaceful Possession Letter, which Prisco signed on behalf of GIA as its "President," GIA further acknowledged and agreed that: (a) GIA was in default under the Financing Agreements and with respect to its Obligations to CIT -- thereby entitling CIT to exercise immediately its rights and remedies under the Financing Agreements, applicable law and otherwise; (b) GIA did not have sufficient working capital to continue its business and was without the means to protect the collateral (including the Inventory) that CIT held for GIA's Obligations; and (c) GIA was waiving all of its rights to notification or otherwise in connection with any disposition by CIT of its collateral pursuant to Article 9 of the Uniform Commercial Code.

15. GIA further agreed to surrender, deliver and grant to CIT peaceful possession of the CIT Collateral (including the Inventory) wherever located, and the products and proceeds thereof.

16. Following GIA's surrender to CIT of peaceful possession of the CIT Collateral, CIT conducted a duly noticed public auction sale of certain of GIA's inventory and equipment on May 28, 2008 from which CIT collected $300,000 of net proceeds. CIT has also applied against GIA's outstanding Obligations a total of $156,513.77 of cash collateral pledged for those Obligations by another guarantor, Prisco Properties, LLC, and $312,990.71 of cash collateral that had been pledged by Prisco to CIT to secure GIA's Obligations. After application of those amounts, the outstanding aggregate amount of all Obligations owing to CIT by GIA amounted on June 24, 2008 to not less than $5,084,124.34, together with all fees, interest, costs and expenses accrued and accruing thereon, or chargeable with respect thereto, no portion of which has been paid, although duly demanded.

17. On June 24, 2008, CIT made written demand upon Prisco for payment under the Prisco Guaranty of all outstanding Obligations owing to CIT from GIA in the principal amount of not less than $5,084,124.34, together with all fees, interest, costs and expenses accrued and accruing thereon, or chargeable with respect thereto. A copy of CIT's June 24, 2008 demand for payment under the Prisco Guaranty is incorporated herein by reference, made a part hereof, and annexed hereto as Exhibit "F."

## AS AND FOR A FIRST CLAIM FOR RELIEF

18. By reason of the foregoing, and pursuant to the Prisco Guaranty, there is now due and owing from Prisco to CIT, the principal sum of $5,084,124.34, together with

interest accrued and accruing, together with other fees and charges provided for in the Financing Agreements, no part of which has been paid, although duly demanded.

### AS AND FOR A SECOND CLAIM FOR RELIEF

19. CIT repeats and realleges all of the allegations set forth in paragraphs 1 to 16 above with the same force and effect as if more fully set forth hereat.

20. Upon information and belief, CIT has incurred, and will in the future incur, costs and expenses, including reasonable attorneys' fees in connection with (a) GIA's failure to pay its Obligations to CIT and (b) this action brought on the Prisco Guaranty in the sum of $500,000.

21. By reason of the foregoing, and in accordance with the specific terms and conditions of the Prisco Guaranty, there is now due and owing from Prisco to CIT the sum of not less than $500,000, no part of which has been paid.

WHEREFORE, CIT demands judgment against Prisco as follows:

(A) On the First Claim for Relief against Prisco in the principal sum of $5,084,124.34, together with interest accrued and accruing thereon, from on and after June 24, 2008; and

(B) On the Second Claim for Relief against Prisco in the sum of not less than $500,000, together with the costs and disbursements of this action and such other, further and different relief as to the Court may seem just and proper.

Dated: New York, New York
August 7, 2008

>                    OTTERBOURG, STEINDLER, HOUSTON
>                    & ROSEN, P.C.
>
>                    By: _____
>                         Lloyd M. Green (LG 9140)
>                         Of Counsel
>                    Attorneys for Plaintiff
>                    The CIT Group/Commercial Services, Inc.
>                    230 Park Avenue
>                    New York, New York 10169
>                    (212) 661-9100